JAVIER ZEQUEIRA, Plaintiff and Appellee, *v.* THE UNIVERSITY OF PUERTO RICO, Defendant. RAFAEL DE J. CORDERO, AUDITOR OF PUERTO RICO, Intervener and Appellant.

No. 10968. Argued March 8, 1954.—Decided April 13, 1954.

*José Trías Monge, Attorney General,* and *Edgar S. Belaval, Assistant Attorney,* for appellant. *Rafael Pastor* and *Horacio Franceschi* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In the year 1947 engineer-contractor Javier Zequeira entered into some contracts with the University of Puerto Rico for the construction of the Industrial Arts School, which he performed pursuant to the contracts. Contrary to the practice followed by every engineer-contractor, Zequeira did not include in the estimates on which the quotations were based and which were accepted by the University for the performance of such work, the excise taxes which he was bound to pay on the contracts pursuant to the provisions of § 16, par. 4, of the Internal Revenue Act of Puerto Rico, nor the tax of 1/1000 on the amount of the contracts which is covered into the funds of the Engineers Association of Puerto Rico. This was due to the fact that the University maintained that, being a public corporation, the contractor was not bound to pay those taxes. However, the contracts were signed on the understanding that the University would absorb those taxes in the event the contractor were required to pay. The works were begun and continued until the early part of December 1947, when the contractor was informed by the University that the Auditor of Puerto Rico refused to authorize payments for the work performed up to that time unless the taxes in question were paid. After notifying the University, the contractor suspended the work and resolved to resort to the courts unless it were decided that he was not liable for payment of the taxes, or if he should pay them, that the understanding in respect to the payment of such taxes to which the contracts were subject would, in that event, be enforced. The Superior Educational Council was called to a meeting in Fortaleza with the then Governor of Puerto Rico and Auditor Rafael de J. Cordero. The opinion which prevailed at the meeting was that the contractor was bound to pay the taxes in question, as alleged by the Auditor. However, at that same meeting the University of Puerto Rico, through the Chancellor and other members of the Superior Educational Council, recognized and ratified once more that it was bound to absorb

those taxes, and to that effect agreed that the contractor would pay the taxes and the University would afterwards reimburse him. In view of this compromise, the contractor paid in January 1948 the sum of $17,150.16 and proceeded with the work. In October of that year the University submitted to the Auditor of Puerto Rico voucher No. 2990 for the sum of $17,150.16, covering the reimbursement in question, but that officer refused to approve it on that occasion as well as on subsequent occasions. Finally, on appeal the Governor of Puerto Rico sustained the Auditor's action. The University has always recognized, through official and express acts, the contractor's right to recover the sum of $17,150.16 as a contractual question, but the Auditor of Puerto Rico has always refused to issue the corresponding vouchers.

In June 1951 contractor Zequeira brought action in the District Court of Puerto Rico, San Juan Section, against the University of Puerto Rico, to recover the sum of $17,150.16. Rafael de J. Cordero, in his capacity as Auditor of Puerto Rico, requested and obtained intervention as defendant in that action. Both the University of Puerto Rico and the Auditor filed an answer accepting the essential allegations of an amended complaint setting forth, substantially, the facts above recited. The intervener alleged as defense that the contract between the University and plaintiff, whereby the former would absorb the taxes which the latter was bound to pay, has no legal effect or force whatever, that the complaint does not state facts sufficient to constitute a cause of action, that the court is without jurisdiction and that, if plaintiff should prevail, he would be under the obligation to pay the tax on the amount of such taxes, since the latter sum will be a part of the amount involved in the contract.

Upon request, the lower court rendered judgment on the pleadings for plaintiff and ordered the University of Puerto Rico to pay to the former the sum claimed plus $2,000 for

attorney's fees and the costs. The judgment was rendered on February 18, 1953 and the parties were notified on the 26th of the same month and year. On March 30, 1953 the intervener appealed to this Court from that judgment. The University of Puerto Rico did not appeal.

The plaintiff-appellee filed in this Court a motion to dismiss the appeal taken by the intervener. That motion was denied without prejudice to reproducing it when submitting the case on the merits, which plaintiff-appellee did. Since that motion challenges the jurisdiction of this Court to entertain the appeal, we must first decide that motion.

Plaintiff-appellee's motion to dismiss alleges that the appeal is null and void. He argues that the party thereto —Rafael de J. Cordero—in his capacity as Auditor of Puerto Rico and intervener, was not the party or officer entitled to take the appeal. In our opinion, he is right.

Rafael de J. Cordero held on the date of commencement of this action the office of Auditor of Puerto Rico, created by § 20 of our former Organic Act (Jones Act). Among the powers of the Auditor was the power to examine, adjust, decide, audit and settle all accounts and claims pertaining to the revenues and receipts from whatever source of the Government of Puerto Rico, and to examine, audit and settle, in accordance with law and administrative regulations, all expenditures of funds and property pertaining to the Government of Puerto Rico, or any of its dependencies. It was also his duty to bring to the attention of the proper administrative officers expenditures which, in his opinion, were extravagant, excessive, unnecessary, or irregular. His jurisdiction over accounts and all vouchers and records pertaining thereto was exclusive. Section 20 of the former Jones Act. Relying on those legal provisions, Cordero requested and obtained intervention in this action because, as he alleged, "in his capacity as Auditor of Puerto Rico, it is his duty to see that the disbursements of funds of The People

of Puerto Rico are made in strict compliance with the terms of the law."

However, the judgment in this case was rendered by the lower court on February 18, 1953 and the parties were notified on the 26th of the same month and year. On March 30, 1953 the intervener, the Auditor of Puerto Rico, filed his notice of appeal. The office of the Auditor of Puerto Rico had by then been abolished and intervener Cordero had ceased to be that officer and had become by appointment the Controller of Puerto Rico. This new office was created by Article III, § 22, of the Constitution of the Commonwealth of Puerto Rico which has been in force since July 25, 1952. That Constitution also created in Article IV, § 6, the office of the Secretary of the Treasurer. The duties of the former Auditor were divided into two parts, one of which was entrusted to the Controller and the other to the Secretary of the Treasury. The Constitution provides that "The Controller shall audit all the revenues, accounts and expenditures of the Commonwealth, of its agencies and instrumentalities and of its municipalities, in order to determine whether they have been made in accordance with law." Article III, § 22, of the Constitution, and Act No. 9 of July 24, 1952 (Spec. Sess. Laws, p. 16). The auditing function of the Controller therefore commences after the revenues, accounts and expenditures have been made. On the other hand, the functions with regard to pre-audit, examination and supervision of public receipts and expenditures which were formerly discharged by the Auditor of Puerto Rico, passed to the Secretary of the Treasury. Act No. 10 of July 24, 1952 (Spec. Sess. Laws, p. 22). It is evident, therefore, that the Controller cannot intervene in the functions which have been assigned by the law to the Secretary of the Treasury, nor can he have any interest in them. Therefore, the Controller had no interest whatever in this action on the date of the filing of the notice for appeal. Rather, it was incumbent upon the Secretary of the Treasury to decide whether the

judgment of the lower court should be abided by or an appeal taken. In the latter case, it was necessary for him to obtain in due time, that is, before expiration of the period within which to appeal,[1] the corresponding substitution of the parties pursuant to the provisions of Rule 25(d) of the Rules of Civil Procedure.[2]

In support of his contention, plaintiff-appellee cites the case of *Davis* v. *Preston*, 280 U. S. 406, 74 L. Ed. 514,[3] from which we extract the following:

"Within the allotted three months Davis, describing himself as Federal Agent, and the surety company petitioned this Court for a review on certiorari, and the petition was granted.

"It now appears that when the petition was presented Davis had ceased to be Federal Agent and had been succeeded in that office by Andrew W. Mellon, —thereby making the judgment unenforceable against Davis and possible of satisfaction only after the substitution of his successor, Mellon. Therefore Davis was not then in a position to complain of the judgment or to invoke a review of it by this Court. All right and discretion to do either had passed to his successor in office. *Florida ex rel. Wailes* v. *Croom,* 226 U. S. 309; *Taylor* v. *Savage,* 1 How. 282, 286; *Dolan* v. *Jennings,* 139 U. S. 385, 387; *McClane* v. *Boon,* 6 Wall. 244.

"It follows that the writ of certiorari granted on the petition of Davis was improvidently allowed and must be dismissed. The fact that the surety company joined in the petition can not alter the result. While the company was adjudged liable for the costs in the two appellate courts, that feature of the judgment of affirmance is not made a ground of complaint. Nor does it enable the company to complain of the judgment in other particulars. *Smith* v. *Indiana,* 191 U. S. 138, 149–150.

---

[1] This is not an appeal taken by an officer having an interest therein who afterwards ceases to hold office or his functions are assigned to another. Substitution in this case would be proper. See Rule 17 of our Regulations and *Stitzel-Weller Distillery* v. *Wickard,* 118 F. 2d 19.

[2] That Rule provides:

"(d) *Public Officers; Death or Separation from Office.*—When a public officer or an officer of any governmental agency is a party to an action and during its pendency dies, resigns, or otherwise ceases to hold office, the action may be continued by or against his successor."

"A motion is now made by Andrew W. Mellon, as Federal Agent, for his substitution in the present proceeding in the place of Davis. But the motion must be denied. The succession in office, as now appears, occurred before there was any effort to obtain a review in this Court. After the succession Davis was completely separated from the office and without right to invoke such a review or exercise any authority or discretion in that regard. Therefore his petition must be disregarded. The time within which such a review may be invoked is limited by statute and that time has long expired. To grant the motion in these circumstances would be to put aside the statutory limitation and to subject the party prevailing in the state court to uncertainty and vexation which the limitation is intended to prevent.

"The provisions relating to substitution which were added to Section 206 of the Transportation Act of 1920 by the Act of March 3, 1923, c. 233, 42 Stat. 1443, are cited in support of the motion. But, even when they are liberally construed, as they probably should be, they disclose no purpose either (*a* ) to enable a former Federal Agent to invoke a review by this Court of a judgment which is of no legal concern to him or (*b*) to modify or enlarge the prescribed statutory period for invoking the reviewing power of this Court."

See in this connection *Nudelman* v. *Globe Varnish Co.*, 312 U. S. 690, 95 L. Ed. 1126.

The intervener-appellee contends that the case of *Davis* v. *Preston, supra,* does not apply to the case at bar, because there the officer who took the appeal had already ceased to

---

[3] The pertinent provisions of the Transportation Act of 1920 (42 Stat. 1443), as amended in 1923, to which reference is made in that case, read as follows:

"(*h*) Actions, suits, proceedings, and reparation claims, of the character described in subdivision (*a*), (*c*), or (*d*), properly commenced within the period of limitation prescribed, and pending at the time this subdivision takes effect, shall not abate by reason of the death, expiration of term of office, retirement, resignation, or removal from office of the Director General of Railroads or the agent designated under subdivision (*a*), but may (despite the provisions of the Act entitled 'An Act to prevent the abatement of certain actions', approved February 8, 1899), be prosecuted to final judgment, decree, or award, substituting at any time before satisfaction of such final judgment, decree, or award the agent designated by the President then in office. Nor shall any action, suit, or other proceeding heretofore or hereafter brought by any public

be a public officer, while here Cordero is still a public officer. We disagree. We have already seen that, although Cordero is and was in the discharge of the office of Controller on the date the appeal was taken, the powers, duties and attributes appertaining to the Auditor of Puerto Rico upon which he relied to intervene in this action had passed to the Secretary of the Treasury.[4] Therefore, although Cordero is still a public officer, he has no more interest in this litigation than any other public officer would have, except the Secretary of the Treasury. Thus, the principle laid down in the *Davis* case is applicable here and, consequently, the motion of plaintiff-appellee is granted and the appeal is dismissed for lack of jurisdiction.

Mr. Justice Belaval did not participate herein.

officer or official, in his official capacity, to enforce or compel the performance of obligation due or accruing to the United States arising out of Federal control, abate by reason of the death, resignation, retirement, or removal from office of such officer or official, but such action, suit, or other proceeding may (despite the provisions of such Act of February 8, 1899), be prosecuted to final judgment, decree, or award, substituting at any time before satisfaction of any such final judgment, decree, or award the successor in office."

[4] We are not deciding whether the Auditor of Puerto Rico had a right to intervene in this action. This is the presumption in view of the fact that this question has not been raised by plaintiff-appellee.